UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JEAN HARBIN o/b/o                            Case No. 11-15699
PAUL SARVER

                                            Lawrence P. Zatkoff
            Plaintiff,                       United States District Judge
v.

                                            Michael Hluchaniuk
COMMISSIONER OF SOCIAL SECURITY,            United States Magistrate Judge

            Defendant.
_____/

**REPORT AND RECOMMENDATION**
**CROSS MOTIONS FOR SUMMARY JUDGMENT (Dkt. 10, 15)**

I.   **PROCEDURAL HISTORY**

     A.   **Proceedings in this Court**

     On December 30, 2011, plaintiff Paul Sarver filed the instant suit seeking

judicial review of the Commissioner's unfavorable decision disallowing benefits.

(Dkt. 1).  Pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 72.1(b)(3), District

Judge Lawrence P. Zatkoff referred this matter to the undersigned for purposes of

reviewing the Commissioner's decision denying plaintiff's claims for disability

insurance benefits and supplemental security income benefits.  (Dkt. 2).  This

matter is before the Court on cross-motions for summary judgment.

     B.   **Administrative Proceedings**

     Plaintiff filed the instant claims for disability insurance benefits and

supplemental security income benefits on August 29, 2000, alleging disability since July 15, 1998. (Dkt. 7-1, Pg ID 96-98). The claims were initially disapproved by the state agency responsible for making disability determinations on behalf of the Commissioner on December 6, 2000 (Dkt. 7-1, Pg ID 76-80), and this determination was affirmed on reconsideration on March 22, 2001. (Dkt. 7-1, Pg ID 83-87). Plaintiff requested a hearing and on January 21, 2002, plaintiff appeared with counsel before Administrative Law Judge Bernard Trembly, who considered the case *de novo*. (Dkt. 7-8, Pg ID 464-83). In a decision dated March 21, 2002, ALJ Trembly found that plaintiff was not disabled. (Dkt. 7-6, Pg ID 339-47). Plaintiff requested a review of that decision, and, on March 24, 2003, the Appeals Council remanded plaintiff's claim for a new hearing and decision. (Dkt. 7-6, Pg ID 363-66). A hearing was held before ALJ Michael Wilenkin on July 6, 2004. (Dkt. 7-9, Pg ID 484–Dkt. 7-10 Pg ID 513). By decision dated October 18, 2004, ALJ Wilenkin found plaintiff not disabled. (Dkt. 7, Pg ID 48-58). Plaintiff again requested review of that decision, and the Appeals Council denied review on February 9, 2007. (Dkt. 7, Pg ID 41-44).

Plaintiff subsequently filed a civil action in the United States District Court for the Eastern District of Michigan. (Dkt. 7-11, Pg ID 577-80). In an opinion dated July 28, 2008, the District Court, Honorable Sean F. Cox, remanded the matter for further proceedings. (Dkt. 7-11, Pg ID 593-604). On April 2, 2009,

2

ALJ Wilenkin issued a partially favorable decision finding plaintiff disabled since June 6, 2007. (Dkt. 7-11, Pg ID 560-74). Plaintiff requested review of the ALJ's decision, to the extent it found him not disabled prior to June 6, 2007, and, on August 19, 2009, the Appeals Council affirmed the ALJ's decision to the extent it found plaintiff disabled since June 6, 2007, but remanded the claim for reconsideration of the earlier time period. (Dkt. 7-12, Pg ID 623-33).

A third hearing was held on April 29, 2010, this time before ALJ Melvin Kalt. (Dkt. 7-13, Pg ID 714-49). On September 23, 2010, ALJ Kalt found that plaintiff was not disabled prior to his date last insured of December 31, 2003. (Dkt. 7-10, Pg ID 535-49).[1] Plaintiff again requested review by the Appeals Council, and the Appeals Council assumed jurisdiction of the claim and, on November 8, 2011, issued its own decision finding that plaintiff was not disabled. (Dkt. 7-10, Pg ID 514-27). This decision became the final decision of the Commissioner.[2]

For the reasons set forth below, the undersigned **RECOMMENDS** that plaintiff's motion for summary judgment be **DENIED**, that defendant's motion for

---

[1]The issue of whether plaintiff was disabled at a later time and eligible for SSI benefits was rendered moot by the fact that plaintiff was not financially eligible for those benefits. (Dkt. 7-10, Pg ID 538).

[2]On March 11, 2012, plaintiff died, and the Court subsequently granted Jean Harbin, plaintiff's wife, permission to substitute as the plaintiff. (Dkt. 12).

summary judgment be **GRANTED**, and that the findings of the Commissioner be **AFFIRMED**.

## II.    FACTUAL BACKGROUND

### A.    Appeals Council Findings

Plaintiff was 41 years old at his alleged onset date of disability.  (Dkt. 7-14, Pg ID 718-19).  Plaintiff's relevant work history included work as an electrician. (Dkt. 7-14, Pg ID 744).  In denying plaintiff's claims, defendant Commissioner considered cardiac arrhythmia, hypertension, chronic obstructive pulmonary disease, frequent headaches, low back pain, generalized anxiety disorder and major depression as possible bases of disability.  (Dkt. 7-10, Pg ID 526).

The Appeals Council agreed with the ALJ's application of the five-step disability analysis and the ALJ's findings under steps 1, 2, 3, 4 and 5 of the sequential evaluation; namely, that plaintiff has not engaged in substantial gainful activity since July 1, 1998, that plaintiff has severe impairments which do not meet or medically equal one of the listed impairments, that he is not capable of performing his past relevant work, and that there is a significant number of jobs available in the national economy that plaintiff is capable of performing.  (Dkt. 7-10, Pg ID 518-19, 526-27).

### B.    Plaintiff's Claims of Error

Plaintiff makes two claims of error.  Plaintiff first argues that the Appeals

Council failed to follow the treating physician rule and did not properly weigh the medical source opinion and give controlling weight to the opinions of his treating physicians. Second, plaintiff claims that the Appeals Council failed to properly assess plaintiff's credibility.

### 1.     The Medical Record

#### a.     San Carlos Medical Group (Dr. Martin Nosan)

Martin Nosan, M.D., a family practitioner, evaluated plaintiff on July 14, 1998 for complaints of increased swelling in his ankles and some shortness of breath over the last couple of weeks.  (Dkt. 7-3, Pg ID 203).  An examination revealed profound rhinitis, lungs with tight rales and wheezes overall, an inability to appreciate heart sounds, and 2+ edema of the legs.  (Dkt. 7-3, Pg ID 202).  Dr. Nosan diagnosed bronchospasm, possible bronchitis, possible congestive heart failure, and rhinitis, prescribed Flovent, Combivent, Furosemide, and Spironolactone, and "[w]arned" plaintiff "not to work."  *Id.*  On July 21, 1998, plaintiff stated he was doing a little better and his ankles were not quite as swollen, but that his leg swelling increased in the afternoons.  *Id*.  It was noted that plaintiff was laid off work and Dr. Nosan's examination revealed scattered wheezes and trace edema and no evidence of congestive heart failure.  *Id.*  The doctor urged plaintiff not to drink alcohol and to reduce his tobacco use as much as possible.  *Id.*

On August 6, 1998, plaintiff stated that he was feeling somewhat better but

was still short of breath, particularly with hot weather, and he continued to have expiratory wheezing.  (Dkt. 7-3, Pg ID 200). Dr. Nosan noted that plaintiff's toxic hepatitis was resolving and the edema was gone.  *Id.*  At the next visit, on August 26, 1998, plaintiff stated he was feeling better but continued to wheeze quite a bit. It was noted that he quit using alcohol but continued to smoke and Dr. Nosan's examination revealed clear lungs but wheezing when plaintiff lies down, no edema and improved hypertension.  *Id.*  On September 28, 1998, plaintiff complained of back pain, because he did "a lot of weeding," and a little dyspnea at rest.  (Dkt. 7-3, Pg ID 198).  An examination revealed tenderness above the waist in the back and Dr. Nosan diagnosed muscle strain of the low back from overuse, chronic bronchitis, controlled bronchospasms, and improved hypertension.  *Id.*  On December 1, 1998, plaintiff reported he was doing pretty well, had discontinued his inhalers and "[w]as breathing okay."  *Id.*  He complained of pain after helping a friend with some "cement work" and feeling something tear in his left flank.  *Id.* He exhibited expiratory and inspiratory wheezes, no peripheral edema, heart sinus "tachy" at 104, and exquisite tenderness in the back, and Dr. Nosan diagnosed costochondral tear, chronic bronchitis, and hypertension.  (Dkt. 7-3, Pg ID 196, 198).

At a follow-up on April 15, 1999, plaintiff reported that he is doing fairly well but complained of profound shortness of breath with walking even one block.

*Id.* He continued to smoke and reported that he could not afford some of his medications. *Id.* His lungs were clear, hypertension and toxic hepatitis controlled, and Dr. Nosan diagnosed probable chronic obstructive pulmonary disease ("COPD") with tachypnea at rest and dyspnea on exertion. *Id.* A pulmonary function test performed on May 13, 1999 showed possible early obstructive pulmonary impairment that may be reversible in nature, and showed significant improvement after bronchodilator therapy was administered. (Dkt. 7-3, Pg ID 193-94).

On June 15, 1999, plaintiff complained of swelling and sores on his legs. (Dkt. 7-3, Pg ID 192). An examination revealed a brawny right calf that was swollen and firm compared to the left, with multiple ulcerations and left leg ulcerations. *Id.* Plaintiff was diagnosed with bilateral leg cellulitis. *Id.* On June 21, 1999, plaintiff complained of increased bilateral edema. (Dkt. 7-3, Pg ID 190). An exam by Dr. Nosan was notable for bibasilar rales, 1 to 2+ edema, and ulcerations of the legs that were improving. *Id.* Dr. Nosan completed a Physician's Supplementary Certificate on the same day in which he diagnosed COPD, pain, and cellulitis and opined that plaintiff was unable to walk more than 2 blocks. (Dkt. 7-3, Pg ID 191).

On July 20, 1999, plaintiff reported worsening symptoms with nighttime wheezing, increased shortness of breath–stating that it takes him twice as long to

mow the lawn because of his shortness of breath and wheezing–and dramatic fatigue. (Dkt. 7-3, Pg ID 188, 190). An examination revealed inspiratory and expiratory wheezes and Dr. Nosan diagnosed mixed chronic bronchitis, reversible airway disease and COPD, improving cellulitis, probable diabetes, and probable permanent disability due to pulmonary conditions. *Id.* The doctor advised plaintiff to continue his medications and decrease smoking completely. *Id.* On August 30, 1999, plaintiff reported continued shortness of breath, tachypnea with any exertion, nighttime wheezing, and tenderness in the ankles with walking. An examination was notable for expiratory wheezes and tenderness of the ankles bilaterally. *Id.* At a follow-up on November 4, 1999, plaintiff complained of shortness of breath with exertion and worsening leg swelling. (Dkt. 7-3, Pg ID 187). He was observed to have clear lungs although was dyspeneic at rest and Dr. Nosan's examination revealed trace edema of both legs with violaceous changes. *Id.* He diagnosed mixed chronic bronchitis, small airway disease, COPD, borderline controlled hypertension, and compensated probable congestive heart failure. *Id.*

### b.      Sharp Chula Vista Medical Center

On May 15, 2000, plaintiff was admitted to Sharp Chula Vista Medical Center due to increasing shortness of breath with a lot of difficulty breathing. (Dkt. 7-4, Pg ID 245-47). An examination was notable for absent dorsalis pedis pulse on the right, a lot of edema, bilateral rhonchi and wheezing, severe obesity,

8

and oozing ulcers of the right distal leg. *Id.* He was diagnosed with acute respiratory distress, rule-out myocardial infarction, acute cellulitis of the right lower extremity, alcoholism, acute renal failure, and rhabomyolysis, nicotine addiction, and exogenous obesity. *Id.* On May 23, 2000, plaintiff was seen for a cardiac consultation. (Dkt. 7-4, Pg ID 227-28). The attending cardiologist, Dr. Ravindra Prabhu, M.D., noted that plaintiff exhibited atrial fibrillation beats with evidence of preexcitation and also the presence of fusion beats. There was also evidence of "wide complex tachycardia." *Id.* An echocardiogram revealed a mildly enlarged left ventricle and an ejection fraction of 52%. *Id.* It was recommended that plaintiff begin a medication treatment regimen and undergo ablation of the bypass tract. *Id.* Plaintiff was treated in the hospital for over a month, and discharged on June 23, 2000. (dkt. 7-3, Pg ID 205-06). His final diagnoses were: respiratory distress-resolved, rhabdomyolysis-resolved, and acute renal failure-resolved, controlled Wolff-Parkinson-White syndrome, healed ulcers of the right leg, stabilized gastrointestinal bleed, alcoholism, exogenous obesity, and nicotine addiction. *Id.*

### c.    Grossmont Spring Valley Family

Arthur Cardones, M.D., evaluated plaintiff on July 18, 2000. (Dkt. 7-5, Pg ID 295). Plaintiff was noted to be obese at 73 inches tall and 273 pounds and Dr. Cardones diagnosed a history of cardiac arrhythmias, asthma, and hypertension and

refilled plaintiff's medications.  *Id.*  On August 1, 2000, Mr. Sarver was asymptomatic, he stated that he felt better and he was started on Lipitor.  (Dkt, 7-5, Pg ID 294).  At a followup visit on October 31, 2000, Dr. Cardones' examination of plaintiff noted plaintiff was currently asymptomatic, with no chest pains, palpitations or shortness of breath, and revealed mild wheezing with positive airflow and clubbing of the extremities.  (Dkt. 7-5, Pg ID 286). The doctor diagnosed controlled hypertension, asthma, anemia, possible COPD, and cardiac arrhythmia, and plaintiff's medications were refilled.  *Id.*  On November 29, 2000, plaintiff complained of increased shortness of breath with walking 10 to 20 yards, despite compliance with his medications.  (Dkt. 7-5, Pg ID 279). The doctor's examination revealed mild wheezing, decreased airflow, and clubbing of the extremities.  *Id.*  A chest x-ray in November 2000 revealed clear lungs and no active pulmonary disease.  (Dkt. 7-5, Pg ID 314).  On January 16, 2001, plaintiff complained of continued shortness of breath.  (Dkt. 7-5, Pg ID 277).  Dr. Cardones' examination again revealed mild wheezing and clubbing of the extremities.  *Id.*  At a follow-up on February 14, 2001, plaintiff continued to complain of shortness of breath and exhibited mild wheezing and clubbing of his extremities on examination.  (Dkt. 7-5, Pg ID 275).  Plaintiff was advised to have a pulmonary consultation and to quit smoking.  *Id.*

　　Dr. Cardones completed a Multiple Impairment Questionnaire dated March

16, 2001.  (Dkt. 7-5, Pg ID 302-09).  He diagnosed asthma/COPD/smoker, hypertension, cardiac arrhythmia, and anemia.  *Id.*  Clinical findings included wheezing in the lung bases and clubbing of the extremities. *Id.* Dr. Cardones cited to pulmonary function testing showing a moderate obstructive lung defect that also supported his findings.  *Id.*  Plaintiff's primary symptoms were shortness of breath, coughing, and exertional dyspnea.  *Id.*  Dr. Cardones opined that plaintiff was able to sit four hours total and stand/walk one hour total in an eight-hour workday and occasionally lift and carry up to 5 pounds.  *Id.*  Dr. Cardones estimated that plaintiff would be absent from work, on the average, two to three times a month. *Id.*  Other limitations that affected plaintiff's ability to work at a regular job on a sustained basis were a need to avoid fumes, gases, temperature extremes, and dust, and no pushing/pulling.  *Id.*

On April 16, 2001, plaintiff complained of headaches and lightheadedness, but no chest pains or shortness of breath.  (Dkt. 7-6, Pg ID 334).  At a follow-up on May 4, 2001, plaintiff reported headaches, rated as seven on a ten-point scale during the worst episodes.  (Dkt. 7-6, Pg ID 333).  He was diagnosed with cardiac arrhythmia, under care, asthma (positive for tobacco use), and headaches.  *Id.*  On July 26, 2001, plaintiff complained of unexplained weight loss (current weight 210 pounds, down from 365 pounds one year ago), and Dr. Cardones noted plaintiff's cardiac arrhythmia and hypertension were stable, that plaintiff still smoked but had

11

not used alcohol since May 2000.  (Dkt. 7-6, Pg ID 332).  On August 15, 2001,

plaintiff complained of headaches that usually lasted all day, but did not complain

of chest pains or shortness of breath.  (Dkt. 7-6, Pg ID 328). His weight was down

to 209 pounds and he was advised to continue his medications. *Id.*  A chest x-ray

revealed that plaintiff's lungs were clear, with a normal cardiac silhouette and no

pleural effusions and no active pulmonary disease.  (Dkt. 7-6, Pg ID 327).  On

August 27, 2001, plaintiff complained of lower back pain after he missed a rung as

he was going down a ladder and fell.  (Dkt. 7-6, Pg ID 325).  Plaintiff exhibited

mild tenderness to his LS spine and negative straight leg raising and Dr. Cardones

prescribed Ultram for his pain.  *Id.*  Plaintiff continued to complain of persistent

headaches on September 20, 2001 and weight loss, which the doctor opined might

be due to a thyroid disorder.  (Dkt. 7-6, Pg ID 323).

Mild wheezing was noted on October 17, 2001, (Dkt. 7-6, Pg ID 316), and

on November 16, 2001, plaintiff complained of lower back pain.  (Dkt. 7-5, Pg ID

313). An examination revealed wheezing and tenderness of the lower back.  *Id.*

Dr. Cardones diagnosed asthma, possible COPD, hypertension, arrhythmia, and

chronic lower back pain secondary to degenerative disc disease.  *Id.*  X-rays of the

lumbar spine dated November 19, 2001 showed mild degenerative disc disease.

(Dkt. 7-5, Pg ID 312).  On December 17, 2001, plaintiff complained of ongoing

chronic back pain and headaches and the doctor noted that plaintiff had not been to

neurology, as recommended.  (Dkt. 7-5, Pg ID 311).  Dr. Cardones diagnosed

COPD/asthma, hypertension, arrhythmia, chronic headaches, and chronic lower

back pain.  *Id.*  On February 21, 2002, Dr. Cardones noted mild clubbing,

hyperventilation and decreased airflow, and that plaintiff still had not had either his

pulmonary or neurological consultation, as recommended.  (Dkt. 7-8, Pg ID 437).

### d.      Ravindra Prabhu, M.D. – Treating Cardiologist

Dr. Prabhu began treating plaintiff on October 30, 2000.  (Dkt. 7-5, Pg ID

267).  Plaintiff reported feeling very well, with no palpitations at all, and Dr.

Prabhu noted that plaintiff weighed 260 pounds, his lungs were clear and there was

no edema. *Id.*  An electrocardiogram showed no Wolff-Parkinson-White pattern.

*Id.*  On February 1, 2001, plaintiff complained of shortness of breath and

generalized fatigue.  (Dkt. 7-5, Pg ID 266).  Dr. Prabhu noted that plaintiff's

weight was down to 235 pounds, his lungs were clear and he had no edema, and

diagnosed plaintiff with Wolff-Parkinson-White syndrome s/p ablation.  *Id.*  On

April 30, 2001, plaintiff complained of low blood pressure and bifrontal

headaches. (Dkt. 7-7, Pg ID 396).  Dr. Prabhu diagnosed hypertension and

headaches and prescribed Prinivil and Fiorinol.  *Id.*  At the next visit, on May 30,

2001, plaintiff again reported unresolved headaches, unexplained weight loss and

intermittent dizziness, especially upon abrupt posture changes.  (Dkt. 7-7, Pg ID

401).  Dr. Prabhu noted that plaintiff's lungs were clear, his heart had a regular

rhythm, and there was no edema, and Atenolol was added to his other medications. *Id.* X-rays of the chest dated May 31, 2001 showed hyperinflation suggestive of COPD or emphysema. (Dkt. 7-7, Pg ID 412). On July 2, 2001, plaintiff's migraine was better. (Dkt. 7-7, Pg ID 400). On August 6, 2001, plaintiff complained of continued headaches and weight loss. (Dkt. 7-7, Pg ID 399). Dr. Prabhu noted that plaintiff's lungs were clear except for a few rhonchi, and Plaintiff's medications were refilled. *Id.* Plaintiff had no changes in his headaches at the next visit, on September 12, 2001, and Dr. Prabhu noted that Wolff-Parkinson-White syndrome was not evident. (Dkt. 7-7, Pg ID 398).

In a letter to plaintiff's attorney dated January 14, 2002, Dr. Prabhu noted that he first treated plaintiff urgently while he was in the hospital in May 2000 for supraventicular tachycardia. (Dkt. 7-6, Pg ID 336). It was noted that plaintiff underwent an ablative procedure at the time, but it was only partially successful and he continued to require medication management. *Id.* Dr. Prabhu opined that plaintiff's arrhythmia is under control, but that plaintiff continued to be affected by disabling symptoms, including shortness of breath, palpitations, fatigue, and headaches. *Id.* Dr. Prabhu noted that plaintiff's conditions were not expected to significantly improve in the next 12 months. *Id.*

Dr. Prabhu also completed a Cardiac Impairment Questionnaire dated January 14, 2002. (Dkt. 7-7, Pg ID 386-90). Dr. Prabhu diagnosed

14

cardiomyopathy, Wolff-Parkinson-White syndrome, and COPD. *Id.* Clinical findings included shortness of breath, fatigue, edema, palpitations, dizziness, and weakness. *Id.* Dr. Prabhu cited to objective findings shown on an EKG and echocardiogram that supported the findings. *Id.* Plaintiff's primary symptoms were shortness of breath, palpitations, and headaches. *Id.* Dr. Prabhu opined that plaintiff was able to sit two to three hours total and stand/walk less than one hour total in an eight-hour workday, and he could occasionally lift and carry up to 10 pounds, but never more. *Id.* Dr. Prabhu assessed that plaintiff's pain, fatigue, or other symptoms were frequently severe enough to interfere with his attention and concentration and that he was incapable of handling even low stress work. *Id.* Other limitations that affected plaintiff's ability to work at a regular job on a sustained basis were a need to avoid fumes, gases, temperature extremes, humidity, dust, and heights, and no pushing and pulling. *Id.* Dr. Prabhu opined that the symptoms and limitations detailed in the questionnaire were present since May 2000. *Id.*

An April 22, 2002, examination revealed that plaintiff had no palpitations, clear lungs, no edema, and his heart had a regular rhythm. (Dkt. 7-7, Pg ID 394). On July 16, 2002, Dr. Prabhu performed a complete electrophysiological study of plaintiff's heart that revealed a normal sinus node function and phase III dependent intermittent right bundle-branch block but no need for an ablation. (Dkt. 7-7, Pg

ID 402-04).  On July 22, 2002, Dr. Prabhu saw plaintiff for a follow-up, noted he was doing well but still smoking, that his Wolff-Parkinson-White syndrome had been eliminated, and refilled his medications.  (Dkt. 7-7, Pg ID 392). The doctor completed a second Cardiac Impairment Questionnaire dated July 24, 2002.  (Dkt. 7-7, Pg ID 381-85). Dr. Prabhu diagnosed COPD and Wolff-Parkinson-White syndrome, with a fair prognosis.  *Id.*  Dr. Prabhu cited clinical findings of shortness of breath, fatigue, palpitations and dizziness/syncope in support of his diagnosis. *Id.*  Dr. Prabhu opined that plaintiff could only sit or stand/walk for two hours each in an eight-hour workday, occasionally lift up to 20 pounds and carry up to 10 pounds, tolerate low work stress, and that he estimated plaintiff would likely be absent from work more than three times a month.  *Id.*

### e.       Michael Raad, D.O. – Treating Physician

Dr. Raad's treatment notes are not part of the administrative record. However, Dr. Raad completed a Multiple Impairments Questionnaire in which he reported that he began treating plaintiff on October 17, 2003.  (Dkt. 7-8, Pg ID 424).  Dr. Raad sent plaintiff for a CT scan of the chest on January 23, 2004, that revealed a small focus of emphysematous changes in the right upper lobe, but no other abnormalities.  (Dkt. 7-8, Pg ID 435).

Dr. Raad noted in the March 8, 2004, Multiple Impairment Questionnaire that plaintiff was being treated monthly, most recently on January 6, 2004.  (Dkt.

7-8, Pg ID 424-31).  Dr. Raad diagnosed moderate COPD, hypertension with heart disease, and coronary artery disease, with clinical findings including decreased breath sounds, expiratory rhonchi, and distant breath and heart sounds.  *Id.*  Dr. Raad reported objective testing that supported his findings included a CT scan of the chest showing emphysema changes and prior stress testing that showed an old myocardial infarction (heart attack) and wall motion changes.  *Id.*  Plaintiff's primary symptoms were shortness of breath, fatigue, and lethargy.  *Id.*  His pain was estimated as moderately severe, at eight on a ten-point scale, and his fatigue as moderately severe to severe, at eight to nine on a ten-point scale.  *Id.*  Dr. Raad opined that plaintiff was able to sit four hours total and stand/walk two hours total in an eight-hour workday, and he could occasionally lift and carry up to 5 pounds. *Id.*  Dr. Raad also opined that plaintiff had significant limitations performing repetitive reaching, handling, fingering, and lifting due to shortness of breath.  *Id.* Dr. Raad found that plaintiff required unpredictable breaks to rest every two to four hours during an eight-hour workday for thirty minutes each time.  *Id.* According to Dr. Raad, other limitations that affected plaintiff's ability to work at a regular job on a sustained basis were a need to avoid fumes, gases, temperature extremes, humidity, and dust, and no pushing.  *Id.*  The doctor opined that the symptoms and limitations described in the questionnaire were present since 1999. *Id.*

17

In a letter to plaintiff's attorney dated May 19, 2004, Dr. Raad reported that plaintiff was followed for hypertension and ischemic cardiovascular disease with a prior inferior myocardial infarction.  (Dkt. 7-8, Pg ID 432-33).  Dr. Raad noted that plaintiff had emphysema, long-standing nicotine abuse, an estimated baseline ejection fraction of 48%, causing chronic congestive heart failure, and that he had undergone two attempted ablation procedures for treatment of Wolff-Parkinson-White syndrome.  *Id.*  Dr. Raad opined that plaintiff was unable to work as a result of his cardiac and lung conditions and his disability was expected to be lifelong.  *Id.*

Dr. Raad also completed a Fibromyalgia Impairment Questionnaire form on September 27, 2006, wherein he noted that plaintiff continued to be treated on a quarterly basis.  (Dkt. 7-8, Pg ID 458-63).  Dr. Raad diagnosed COPD, hypertension, nicotine abuse, coronary artery disease and Wolff-Parkinson-White syndrome, and stated that plaintiff does not have fibromyalgia.  *Id.*  Plaintiff's primary symptoms were fatigue and dyspnea, plaintiff could sit two to three hours and stand/walk two hours in an eight-hour workday, occasionally lift 10 pounds and carry five pounds, and was capable of tolerating a low stress job.  *Id.*  Dr. Raad completed an updated narrative report regarding plaintiff on April 30, 2010, wherein he noted that plaintiff continued to be treated quarterly and that the limitations he had set forth in his 2004 reports remained valid.  (Dkt. 7-13, Pg ID

7-5).  Dr. Raad stated that plaintiff presents with decreased breath sounds, rhonchi on expiration, shortness of breath and fatigue, and has presented with exacerbation of COPD on a few occasions over the past few years.  *Id.*  Dr. Raad continued the same limitations for plaintiff, opining that plaintiff cannot perform part-time or full-time work in any capacity.  *Id.*

### 2.  Plaintiff's claims

Plaintiff argues that the Appeals Council improperly found that the opinions of plaintiff's treating physicians, namely Drs. Cardones, Prabhu and Raad, were not entitled to significant weight.  According to plaintiff, the Appeals Council failed to address the concerns of the previous remand order from the Court that directed the Commissioner to provide "specific reasons" for disregarding or discounting these treating physicians' opinions, and instead impermissibly based its residual functional capacity finding on its own lay interpretation of the raw medical data.

Plaintiff contends that all three of the treating physicians who gave opinions on plaintiff's RFC agreed that plaintiff cannot perform even sedentary work, (Dkt. 7-5, Pg ID 304; Dkt. 7-7, Pg ID 388; Dkt. 7-8, Pg ID 426), and that all three physicians based their opinions on appropriate clinical and diagnostic findings. (Dkt. 7-5, Pg ID 302-03; Dkt. 7-7, Pg ID 386-87; Dkt. 7-8, Pg ID 424-25). Because those opinions from the treating physicians are well-supported by

19

appropriate medical findings and not contradicted by other substantial evidence, the Appeals Council should have given them controlling weight.  Moreover, the Appeals Council failed to give specific and adequate reasons for rejecting those opinions.

For his second claim of error, plaintiff contends that the Appeals Council failed to properly evaluate plaintiff's credibility, but instead simply adopted the ALJ's reasoning for finding plaintiff not credible.  The ALJ stated that there was "equivocal evidence"of whether plaintiff had stopped using alcohol, that plaintiff's conditions were well-controlled with treatment, and that plaintiff continued to smoke.  The Appeals Council also pointed out that plaintiff was "weeding" in September 1998 and helped a friend with "cement work" in December 1998.

Plaintiff argues that the ALJ failed to cite to any specific evidence in support of his conclusions that plaintiff continued to abuse alcohol and that his conditions were controlled with treatment.  Plaintiff also contends that the ALJ impermissibly relied on that fact that plaintiff had not quit smoking, because there is no evidence that plaintiff's medical conditions were severe simply because he continued smoking.  Finally, plaintiff's ability to engage in "weeding" and "cement work" on two occasions with increased symptomology fails to establish that he could work on a sustained basis. *See Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 248-49 (6th Cir. 2007).

20

**B.      The Commissioner's Motion for Summary Judgment**

The Commissioner argues that the Appeals Council reasonably evaluated the medical source opinions in the record in determining plaintiff's RFC, and properly explained why it weighed the conflicting medical evidence as it did, including the treating source opinions.  The Sixth Circuit "has consistently stated that the [Commissioner] is not bound by the treating physician's opinions, and that such opinions receive great weight only if they are supported by sufficient clinical findings and are consistent with the evidence," *Bogle v. Sullivan*, 998 F.2d 342, 347-48 (6th Cir. 1993).  However, even if a medical source has established a treatment relationship with a claimant, that treating physician's opinion does not enjoy a presumptions of correctness when the record contains contradictory evidence.  *See Rogers*, 486 F.3d at 242.  While the Appeals Council acknowledged that plaintiff's treating sources placed significant restrictions on plaintiff's ability to work, it declined to adopt any opinion suggesting plaintiff could not work for a full eight-hour workday because the objective medical evidence and plaintiff's self-reports reflected that plaintiff's condition had improved.  (Dkt. 7-10, Pg ID 520-23).

Specifically, the Appeals Council properly declined to give Dr. Cardones's opinion significant weight because he failed to explain how his progress notes, which showed that plaintiff's hypertension was controlled with medication and that

he had only mild wheezing on examination, supported his highly restrictive assessment.  Further, Dr. Cardones admitted that a cardiologist or pulmonologist would be in a better position to determine plaintiff's functional capabilities and limitations, and plaintiff never saw a pulmonologist.

The Commissioner argues that the Appeals Council also reasonably discounted Dr. Prabhu's opinion because it was inconsistent with the medical evidence which showed that plaintiff had successful surgery and was able to control his arrhythmia.  Plaintiff lost more than 200 pounds, showed no further tachycardia, there was no need for further ablation, and his asthma and hypertension remained well-controlled with medication.  (Dkt. 7-7, Pg ID 392, 403-04).  Similarly, the objective medical evidence did not support Dr. Raad's opinion.  A chest x-ray revealed clear lungs except for a small focus of emphysematous changes, and the results of a myocardial perfusion scan, EKG, and cardiac stress test performed in September 2003 showed a normal heart beat despite hypertension and an ejection fraction of 48%.  (Dkt. 7-8, Pg ID 433, 435). The Commissioner states that the Appeals Council reasonably accounted for any limitations by limiting plaintiff to a restricted range of sedentary work.

The Commissioner further contends that the Appeals Council found that plaintiff's treating physicians were inconsistent with other medical opinions of record, namely Dr. Shanin Keramati, M.D., an internal medicine doctor who

evaluated plaintiff in September 1999, and the state agency physicians who reviewed plaintiff's record and opined in September 1999, December 2000 and March 2001 that plaintiff had a greater functional capacity than those listed by plaintiff's treating physicians.

Dr. Keramati performed a consultative internal medicine examination of plaintiff on September 7, 1999 and noted that plaintiff reported experiencing exertional dyspnea, shortness of breath and wheezing and that he continues to smoke.  (Dkt. 7-3, Pg ID 171-75).  On exam, Dr. Keramati noted that plaintiff's breath sounds were symmetrical, with course rhonchi throughout and mild expiratory wheezing, with a mild increase in the expiratory flow rate, no paraspinous tenderness, negative straight leg raising, 2+ pitting edema of the lower extremities, and strength was 5/5 in all extremities.  *Id.*  Dr. Keramati concluded that plaintiff has evidence of mild obstructive airway disease on exam and a history of pulmonary hypertension, hepatic congestion and lower extremity edema, and that plaintiff could lift and carry twenty pounds occasionally and ten pounds frequently, stand and walk six hours in an eight-hour workday and bend and crouch occasionally.  *Id.*

State agency reviewer, C. Atkins, M.D., completed a physical residual functional capacity assessment on September 20, 1999, noted that plaintiff had relatively normal pulmonary function studies and mild lower extremity edema, and

concluded that plaintiff could perform work at the light exertional level, with certain postural limitations.  (Dkt. 7-3, Pg ID 178-85).  Similarly, Dr. Joel Ross, M.D., reviewed plaintiff's medical records and concluded, on December 4, 2000, that plaintiff could do light work, with limitations including to stand/walk for six hours and sit for six hours in an eight-hour workday.  (Dkt. 7-4, Pg ID 257-64). Dr. Joseph Hartman, M.D., concurred with this opinion on March 21, 2001.  *Id.* According to the Commissioner, the Appeals Council was well within its "zone of choice" in declining to give the treating source opinions controlling weight.

The Commissioner also argues that the Appeals Council properly adopted the ALJ's credibility finding, which is entitled to great weight and deference.  The ALJ agreed that plaintiff had significant physical limitations, but that those limitations were accommodated for in the ALJ's residual functional capacity assessment.  Specifically, plaintiff's physical limitations were accommodated by limiting him to a restricted range of sedentary work with a sit/stand option. Plaintiff's treatment notes did not demonstrate that he had greater limitations than found by the ALJ or Appeals Council.  His hypertension was controlled through medication, his overall condition improved with significant weight loss, and he continued to smoke despite his history of asthma and COPD.  Contrary to plaintiff's assertion, plaintiff's failure to stop smoking despite being instructed to by his physicians, is an appropriate factor when assessing the plaintiff's credibility.

24

*See Sias v. Sec'y of Health & Human Servs.*, 861 F.2d 475, 480 (6th Cir. 1988);

*Galinis v. Comm'r of Soc. Sec.*, 2008 WL 360656, at *8 (W.D. Mich. Feb. 8,

2008). The Appeals Council further properly considered plaintiff's "weeding" and

"cement work" as evidence of plaintiff's daily activities. Therefore, the

Commissioner concludes, the ALJ's credibility finding, and ultimately the Appeals

Council's finding, was supported by substantial evidence.

### D. Plaintiff's Response Brief

Plaintiff argues that, contrary to the Commissioner's argument, the Appeals

Council did not give any weight to the opinions of the state agency consulting and

reviewing physicians that plaintiff could perform a restricted range of light work,

and the Administration's final decision must stand or fall based on the findings

articulated in the decision, not on *post hoc* rationalizations provided by counsel.

Plaintiff further argues that, in any event, the Appeals Council did not find plaintiff

could perform light exertional work, and thus the RFC found, for sedentary work,

is unsupported by the record evidence.

Plaintiff also argues that the Appeals Council improperly assessed plaintiff's

credibility based on the fact that he continued to smoke, and that *Sias v. Secretary

of Health & Human Services*, 861 F.2d 475 (6th Cir. 1988) is not controlling

because here, unlike in *Sias*, plaintiff's physicians only encouraged plaintiff to stop

smoking, but did not *prescribe* such treatment or indicate that failure to follow

prescribed treatment would result in a restored ability to work. Finally, plaintiff argues that the Appeals Council improperly rejected plaintiff's credibility based on two isolated occurrences–weeding and cement work–that do not relate to plaintiff's ability to work on a sustained basis, and the evidence indicates that those activities led to a significant increase in his symptoms.

Plaintiff concludes that the decision of the Commissioner should be reversed and remanded for an award of benefits for the remaining period at issue–between July 15, 1998 and June 5, 2007–because the record is well-developed and plaintiff is deceased. Alternatively, the decision of the Commissioner should be reversed and remanded for a new hearing and decision.

## III. DISCUSSION

### A. Standard of Review

In enacting the social security system, Congress created a two-tiered system in which the administrative agency handles claims, and the judiciary merely reviews the agency determination for exceeding statutory authority or for being arbitrary and capricious. *Sullivan v. Zebley*, 493 U.S. 521 (1990). The administrative process itself is multifaceted in that a state agency makes an initial determination that can be appealed first to the agency itself, then to an ALJ, and finally to the Appeals Council. *Bowen v. Yuckert*, 482 U.S. 137 (1987). If relief is not found during this administrative review process, the claimant may file an

26

action in federal district court. *Mullen v. Bowen*, 800 F.2d 535, 537 (6th Cir.1986).

This Court has original jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g). Judicial review under this statute is limited in that the court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record." *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005); *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997). In deciding whether substantial evidence supports the ALJ's decision, "we do not try the case de novo, resolve conflicts in evidence, or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). "It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 247 (6th Cir. 2007); *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 475 (6th Cir. 2003) (an "ALJ is not required to accept a claimant's subjective complaints and may ... consider the credibility of a claimant when making a determination of disability."); *Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 542 (6th Cir. 2007) (the "ALJ's credibility determinations about the claimant are to be given great weight, particularly since the ALJ is charged with observing the claimant's demeanor and credibility.") (quotation marks omitted);

*Walters*, 127 F.3d at 531 ("Discounting credibility to a certain degree is appropriate where an ALJ finds contradictions among medical reports, claimant's testimony, and other evidence."). "However, the ALJ is not free to make credibility determinations based solely upon an 'intangible or intuitive notion about an individual's credibility.'" *Rogers*, 486 F.3d at 247, quoting Soc. Sec. Rul. 96-7p, 1996 WL 374186, *4.

If supported by substantial evidence, the Commissioner's findings of fact are conclusive. 42 U.S.C. § 405(g). Therefore, this Court may not reverse the Commissioner's decision merely because it disagrees or because "there exists in the record substantial evidence to support a different conclusion." *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006); *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (*en banc*). Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers*, 486 F.3d at 241; *Jones*, 336 F.3d at 475. "The substantial evidence standard presupposes that there is a 'zone of choice' within which the Commissioner may proceed without interference from the courts." *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994) (citations omitted), citing, *Mullen*, 800 F.2d at 545.

The scope of this Court's review is limited to an examination of the record only. *Bass*, 499 F.3d at 512-13; *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir.

2001).  When reviewing the Commissioner's factual findings for substantial

evidence, a reviewing court must consider the evidence in the record as a whole,

including that evidence which might subtract from its weight.  *Wyatt v. Sec'y of*

*Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992).  "Both the court of

appeals and the district court may look to any evidence in the record, regardless of

whether it has been cited by the Appeals Council."  *Heston v. Comm'r of Soc. Sec.*,

245 F.3d 528, 535 (6th Cir. 2001).  There is no requirement, however, that either

the ALJ or the reviewing court must discuss every piece of evidence in the

administrative record.  *Kornecky v. Comm'r of Soc. Sec.*, 167 Fed.Appx. 496, 508

(6th Cir. 2006) ("[a]n ALJ can consider all the evidence without directly

addressing in his written decision every piece of evidence submitted by a party.")

(internal citation marks omitted); *see also Van Der Maas v. Comm'r of Soc. Sec.*,

198 Fed.Appx. 521, 526 (6th Cir. 2006).

### B.    Governing Law

The "[c]laimant bears the burden of proving his entitlement to benefits."

*Boyes v. Sec'y of Health & Human Servs.*, 46 F.3d 510, 512 (6th Cir. 1994);

*accord*, *Bartyzel v. Comm'r of Soc. Sec.*, 74 Fed.Appx. 515, 524 (6th Cir. 2003).

There are several benefits programs under the Act, including the Disability

Insurance Benefits Program (DIB) of Title II (42 U.S.C. §§ 401 *et seq.*) and the

Supplemental Security Income Program (SSI) of Title XVI (42 U.S.C. §§ 1381 *et*

*seq.*).  Title II benefits are available to qualifying wage earners who become disabled prior to the expiration of their insured status; Title XVI benefits are available to poverty stricken adults and children who become disabled.  F. Bloch, Federal Disability Law and Practice § 1.1 (1984).  While the two programs have different eligibility requirements, "DIB and SSI are available only for those who have a 'disability.'"  *Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007). "Disability" means:

> inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A) (DIB); *see also* 20 C.F.R. § 416.905(a) (SSI).

The Commissioner's regulations provide that disability is to be determined through the application of a five-step sequential analysis:

> Step One:  If the claimant is currently engaged in substantial gainful activity, benefits are denied without further analysis.
>
> Step Two:  If the claimant does not have a severe impairment or combination of impairments, that "significantly limits ... physical or mental ability to do basic work activities," benefits are denied without further analysis.
>
> Step Three:  If plaintiff is not performing substantial gainful activity, has a severe impairment that is expected

> to last for at least twelve months, and the severe impairment meets or equals one of the impairments listed in the regulations, the claimant is conclusively presumed to be disabled regardless of age, education or work experience.
>
> Step Four:  If the claimant is able to perform his or her past relevant work, benefits are denied without further analysis.
>
> Step Five: Even if the claimant is unable to perform his or her past relevant work, if other work exists in the national economy that plaintiff can perform, in view of his or her age, education, and work experience, benefits are denied.

*Carpenter v. Comm'r of Soc. Sec.*, 2008 WL 4793424 (E.D. Mich. 2008), citing, 20 C.F.R. §§ 404.1520, 416.920; *Heston*, 245 F.3d at 534.  "If the Commissioner makes a dispositive finding at any point in the five-step process, the review terminates."  *Colvin*, 475 F.3d at 730.

"Through step four, the claimant bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that she is precluded from performing her past relevant work."  *Jones*, 336 F.3d at 474, cited with approval in *Cruse*, 502 F.3d at 540.  If the analysis reaches the fifth step without a finding that the claimant is not disabled, the burden transfers to the Commissioner.  *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006).  At the fifth step, the Commissioner is required to show that "other jobs in significant numbers exist in the national economy that [claimant] could perform

31

given [his] RFC and considering relevant vocational factors." *Rogers*, 486 F.3d at

241; 20 C.F.R. §§ 416.920(a)(4)(v) and (g).

If the Commissioner's decision is supported by substantial evidence, the

decision must be affirmed even if the court would have decided the matter

differently and even where substantial evidence supports the opposite conclusion.

*McClanahan*, 474 F.3d at 833; *Mullen*, 800 F.2d at 545.  In other words, where

substantial evidence supports the ALJ's decision, it must be upheld.

### C.    Analysis and Conclusions

#### 1.    Treating Source Opinions

In weighing the opinions and medical evidence, the Appeals Council must

consider relevant factors such as the length, nature and extent of the treating

relationship, the frequency of examination, the medical specialty of the treating

physician, the opinion's evidentiary support, and its consistency with the record as

a whole.  20 C.F.R. § 404.1527(d)(2)-(6).  Therefore, a medical opinion of an

examining source is entitled to more weight than a non-examining source and a

treating physician's opinion is entitled to more weight than a consultative

physician who only examined the claimant one time.  20 C.F.R. § 404.1527(d)(1)-

(2).  A decision denying benefits "must contain specific reasons for the weight

given to the treating source's medical opinion, supported by the evidence in the

case record, and must be sufficiently specific to make clear to any subsequent

reviewers the weight the adjudicator gave to the treating source's opinion and the

reasons for that weight."  Social Security Ruling ("SSR") 96-2p, 1996 WL 374188,

*5 (1996).  The opinion of a treating physician should be given controlling weight

if it is "well-supported by medically acceptable clinical and laboratory diagnostic

techniques" and is "not inconsistent with the other substantial evidence in [the]

case record."  *Wilson*, 378 F.3d at 544; 20 C.F.R. § 404.1527(d)(2).  A physician

qualifies as a treating source if the claimant sees her "with a frequency consistent

with accepted medical practice for the type of treatment and/or evaluation required

for [the] medical condition."  20 C.F.R. § 404.1502.  "Although the ALJ is not

bound by a treating physician's opinion, 'he must set forth the reasons for rejecting

the opinion in his decision.'"  *Dent v. Astrue*, 2008 WL 822078, at *16 (W.D.

Tenn. Mar. 26, 2008) (citation omitted).

Under § 404.1527(d)(2), a treating source's opinion may be rejected or given

less weight where the "supportability" of the doctor's opinion is insufficient,

§ 404.1527(d)(3), or his opinion is not "consistent" with the record as a whole,

§ 404.1527(d)(4).  *Id.*  When reviewing the ALJ's reasoning for this purpose, it is

critical to remember that the Court is "reviewing the ... decision to see if it

implicitly provides sufficient reasons for the rejection of [the treating source's]

opinion ... not merely whether it indicates that the ALJ did reject [that] opinion."

*Id.*  In addition, the ALJ is not required to give controlling weight to the opinion of

33

a treating physician that plaintiff is "disabled" or "unable to work," because that is an issue reserved for the Commissioner. *See* 20 C.F.R. § 404.1527(e)(1). Subsection (e)(3) specifically states that no "special significance" will be given to opinions of disability, even those made by the treating physician. 20 C.F.R. § 404.1527(e)(3).

The Appeals Council first very thoroughly discussed the treatment records from Dr. Nosan, including his June 21, 1999 opinion that plaintiff was unable to work due to chronic obstructive pulmonary disease, dyspnea and cellulitis, and that he could not walk over two blocks without severe dyspnea, and his July 20, 1999 opinion that plaintiff was probably permanently disabled due to pulmonary disease. The Appeals Council concluded:

> There is no evidence of a pulmonary or cardiac impairment at the time of sufficient severity to preclude the claimant from performing sedentary work, which is predominantly performed while seated and does not involve any prolonged walking or standing or lifting over 10 pounds. Dr. Nosan did not report any findings that would be incompatible with the performance of work of a sedentary level of exertion. The pulmonary function study showed only mild and early deficits. Dr. Nosan did not indicate any disabling limitations from the other impairments he reported, including hypertension and obesity. His progress notes generally indicate that the claimant's hypertension was controlled with medication, and he did not report any significant side effects.

(Dkt. 7-10, Pg ID 520). The ALJ's analysis of these records is consistent with the application of the treating physician rule. The Appeals Council evaluated the

34

medical source opinion in accordance with 20 C.F.R. § 404.1527, and its weighing of the opinion was adequate to support its decision.  Further, to the extent Dr. Nosan opined that plaintiff is "disabled" or "unable to work," that opinion is not entitled to weight because that is an issue reserved for the Commissioner.  *Blair v. Comm'r of Soc. Sec.*, 430 Fed. Appx. 426, 429 (6th Cir. 2011).

The Appeals Council next carefully analyzed plaintiff's treatment records with Dr. Cardones, including Dr. Cardones's response to a questionnaire in March 2001 in which he opined that plaintiff could only sit for four hours and stand/walk for one hour in an eight-hour workday, and occasionally lift and carry five pounds. (Dkt. 7-10, Pg ID 520-22).  The Appeals Council concluded:

> The limitations set forth by Dr. Cardones are incompatible with the totality of the evidence, in particular, the lack of objective findings to support a finding of disability.  Those limitations are also inconsistent with Dr. Cardones' own progress notes.  His treatment records show that the claimant's hypertension was controlled with medication and he had only mild wheezes on examination.  While anemia was noted, it subsequently resolved.  Dr. Cardones' opinion is not consistent with information in his treatment records, and therefore is not being accorded significant weight.

(Dkt. 7-10, Pg ID 521).  The Appeals Council also noted that "[t]reatment notes from Dr. Cardones through March 28, 2001 indicate that the claimant's hypertension was controlled; he had occasional mild wheezes on examination," he was noted to be asymptomatic, and a chest x-ray showed no active pulmonary

35

disease.  *Id.*  The Appeals Council also noted that although Dr. Cardones

concluded that he may need to obtain opinions from plaintiff's cardiologist and

pulmonologist for his functional capabilities and limitations, there is no indication

that plaintiff ever saw a pulmonologist.  (Dkt. 7-10, Pg ID 521-22).  Accordingly,

the Appeals Council articulated sufficiently "good reasons" for declining to give

Dr. Cardones' opinion significant weight.

Next, the Appeals Council thoroughly discussed Dr. Prabhu's treatment

notes and opinions.  (Dkt. 7-10, Pg ID 522).  Dr. Prabhu completed a questionnaire

in which he estimated that plaintiff could sit only two to three hours and

stand/walk one hour in an eight-hour workday, and could occasionally lift up to 10

pounds, but that he was incapable of even low stress work.  (Dkt. 7-7, Pg ID 386-

90).  Dr. Prabhu completed a second questionnaire in July 2002, and opined that

plaintiff could sit for two hours and stand/walk for two hours, occasionally lift up

to 20 pounds, and would likely be absent from work as a result of his impairments

more than three times a month.  (Dkt. 7-7, Pg ID 381-85).  However, the Appeals

Council found that:

> [Dr. Prabhu's] reports indicate that the claimant had
> successful surgery and that his arrhythmia was under
> control.  Dr. Prabhu noted in July 2002 that the
> claimant's weight loss had improved his cardiac
> functioning, and that he was doing well.  Dr. Prabhu's
> opinion cannot therefore be accorded significant weight.

(Dkt. 7-10, Pg ID 522).  An electrocardiogram showed no Wolff-Parkinson-White

36

pattern and Dr. Prabhu noted that the syndrome was "not evident" and there was no

need for further ablation.  Dr. Prabhu regularly noted that plaintiff's lungs were

clear, his heart had a regular rhythm, he had no edema, and his hypertension was

controlled with medication.  *Id.*   In light of the diagnostic results showing

improvement and plaintiff's own self-reports of doing well, the Appeals Council

articulated good reasons for not according Dr. Prabhu's opinion regarding

plaintiff's functional limitations significant weight.

Finally, the Appeals Council thoroughly reviewed Dr. Raad's opinions in

response to a questionnaire and in letters to plaintiff's counsel.  (Dkt. 7-10, Pg ID

523).  Dr. Raad opined that plaintiff could sit for four hours and stand/walk for two

hours in an eight-hour workday, but must get up and move around every one to

two hours, and that he could occasionally lift up to five pounds, but was not

capable of full-time employment due to his cardiac and pulmonary diseases.  (Dkt.

7-8, Pg ID 424-31).  The Appeals Council concluded:

> However, the record does not support the validity of the
> posited limitations.  Dr. Raad's reports note that an x-ray
> in January 2004 showed only a small focus of
> emphysematous changes.  There is no indication in his
> reports that the claimant's conditions are not well-
> controlled with medication, or that the claimant
> experiences any side effects from medications.  The
> exercise test cited by Dr. Raad as indicating that the
> claimant's ejection fraction was 48 percent also
> demonstrated that the claimant was asymptomatic during
> the testing and that it was negative for diagnostic ST
> segment abnormalities at the level of exercise achieved.

37

> Therefore, Dr. Raad's opinions are not being accorded
> significant weight.

(Dkt. 7-10, Pg ID 523). Dr. Raad's treatment notes are not part of the

administrative record.  To the extent that plaintiff's test results revealed that he had

problems with his heart, the Appeals Council reasonably accounted for those

problems by limiting him to a restricted range of sedentary work.  The Appeals

Council's analysis of these records is consistent with the application of the treating

physician rule.  Further, to the extent Dr. Raad opined that plaintiff is "disabled" or

"unable to work," that opinion is not entitled to weight because that is an issue

reserved for the Commissioner.  *Blair*, 430 Fed. Appx. at 429.

Contrary to the plaintiff's assertion in his response brief, the Appeals

Council did discuss the state agency consulting physician's opinion as well as the

findings of the state agency reviewing physicians, who found that plaintiff could

perform work of a light level of exertion, and could perform postural activities

occasionally.  (Dkt. 7-10, Pg ID 519, 522-25).  Plaintiff complains that the Appeals

Council improperly found that plaintiff had the RFC for sedentary work because

the state agency physicians opined that plaintiff could do light work.  However, the

Appeals Council noted that the treating source opinions "generally indicated that

the claimant could work at a sedentary level of exertion but that he could not do the

requisite sitting for an 8 hour workday," and concluded, based on the "totality of

the evidence" that plaintiff had the residual functional capacity to perform work of

a sedentary level of exertion with a sit/stand opinion.  (Dkt. 7-10, Pg ID 524).  The
Appeals Council's RFC is proper.

This same issue was recently raised in *Grohoske v. Commissioner of Social
Security*, 2012 WL 2931400 (N.D. Ohio July 18, 2012).  The record in that case
contained an RFC assessment that the plaintiff could do light work, and the ALJ
further reduced the RFC finding to "the full range of sedentary work."  *Id.* at *4.
The court noted that "[t]he clear teachings of the Sixth Circuit is that the
responsibility of determining a claimant's RFC rests with the ALJ," and that
"although an ALJ may not substitute his opinion for that of a physician, the ALJ is
not required to accept *verbatim* the RFC finding of a physician."  *Id.* at * 5
(citations omitted).  The court found that the ALJ properly addressed all the
functional limitations arising from the plaintiff's physical limitations and
considered the opinions of the state agency reviewing physician and reduced the
RFC finding from that recommended so as to give the plaintiff "the full benefit of
all reasonable doubt."  *Id.*

Similarly, here, the Appeals Council thoroughly reviewed all the record
evidence and plaintiff's functional limitations arising from his physical limitations
and rendered an appropriate RFC finding based on the totality of the evidence, and
the finding is supported by substantial evidence.  *See id.*  Therefore, plaintiff's
claim of error should be denied.

## 2.    Plaintiff's Credibility

The Appeals Council considered plaintiff's statements concerning his subjective complaints and concurred with the ALJ's conclusion that plaintiff was not fully credible.  (Dkt. 7-10, Pg ID 525).  The ALJ found a long history of alcoholism but "equivocal evidence as to whether [plaintiff] had stopped drinking," and that plaintiff's conditions were well-controlled with treatment but that plaintiff continued to smoke.  (Dkt. 7-10, Pg ID 547).  The Appeals Council further noted that plaintiff asserted he had a stroke and that his left upper extremity was useless, and that he used a walker for six months after his surgery, but that there is no evidence in the record supporting these claims.  (Dkt. 7-10, Pg ID 525).  In addition, there was evidence in the record that plaintiff was doing a lot of weeding and helped a friend with cement work, and that this indicated that plaintiff has been more active than asserted.  *Id.*

The issue is whether the ALJ's credibility determinations are supported by substantial evidence.  As the Sixth Circuit has recognized, "[u]pon review, we are to accord the ALJ's determinations of credibility great weight and deference particularly since the ALJ has the opportunity, which we do not, of observing a witness's demeanor while testifying."  *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 476 (6th Cir. 2003) ("[A]n ALJ is not required to accept a claimant's subjective complaints and may properly consider the credibility of a claimant when making a

40

determination of disability.").  In reviewing an ALJ's credibility determinations, the Court is "limited to evaluating whether or not the ALJ's explanations for partially discrediting [plaintiff] are reasonable and supported by substantial evidence in the record."  *Jones*, 336 F.3d at 476.

Plaintiff argues that the Appeals Council impermissibly considered that plaintiff was still smoking because there was no evidence that his medical conditions were severe because he continued smoking.  However, contrary to plaintiff's claim, the treatment records repeatedly note plaintiff's tobacco use and reflect that the doctors strongly encouraged plaintiff to stop smoking.  *See supra*. The failure to stop smoking against medical advice can be properly considered in assessing credibility.  *See Galinis v. Comm'r of Soc. Sec.*, 2008 WL 360656, at *8 (W.D. Mich. Feb.8, 2008) ("The Sixth Circuit has indicated that where a claimant declines to stop smoking despite being instructed to by her care providers otherwise is an appropriate factor to consider when assessing the claimant's credibility.") (citing *Hall-Thulin v. Comm'r of Soc. Sec.*, 1997 WL 144237, at *1 (6th Cir. Mar. 27, 1997) (quoting *Sias v. Sec'y of Health & Human Servs.*, 861 F.2d 475, 480 (6th Cir. 1988)); *see also Brumett v. Comm'r of Soc. Sec.*, 2009 WL 690250, at *10 (S.D. Ohio Mar. 11, 2009) (ALJ properly considered that plaintiff continued to smoke despite having asthma and chronic bronchitis); *Long v. Comm'r of Soc. Sec.*, 375 F. Supp.2d 674, 681 (W.D. Tenn. 2005) (ALJ properly

found that plaintiff's continuing to smoke in light of his cardiac and vascular history is inconsistent with his testimony of debilitating illness). Thus, the ALJ properly considered whether plaintiff followed prescribed treatment recommendations from his treating physicians.

Plaintiff also complains that the fact that he engaged in weeding and cement work on two occasions fails to establish that he could perform full-time work on a sustained basis. However, the Appeals Council did not use these activities as evidence of plaintiff's ability to work, but instead explained that this evidence showed that plaintiff has been more active than asserted. *See* 20 C.F.R. § 404.1529(c)(ii); *Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 542 (6th Cir. 2007) (it is appropriate for the ALJ to take plaintiff's daily activities into account in making his credibility determination); *Ervin v. Comm'r of Soc. Sec.*, 2012 WL 4378424, at *5 (E.D. Mich. Aug. 30, 2012) (ALJ properly considered activities such as shoveling a driveway, driving and mowing a lawn in assessing plaintiff's credibility), *adopted by* 2012 WL 4427987 (E.D. Mich. Sept. 25, 2012). The Appeals Council further noted that plaintiff asserted he had a stroke and that his left upper extremity was useless, and that he used a walker for six months after his surgery, but that there is no evidence in the record supporting these claims. The Appeals Council, and the ALJ, considered the entire case record and properly evaluated plaintiff's credibility. The Appeals Council's decision was within that

"zone of choice within which decisionmakers may go either way without interference from the courts," and is supported by substantial evidence.  *See Felisky*, 35 F.3d at 1035.

## IV.   RECOMMENDATION

For the reasons set forth above, the undersigned **RECOMMENDS** that the plaintiff's motion for summary judgment be **DENIED**, that defendant's motion for summary judgment be **GRANTED**, and that the findings of the Commissioner be **AFFIRMED**.

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505 (6th Cir. 1981).  Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation.  *Willis v. Sec'y of Health and Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).  Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2,"

43

etc.  Any objection must recite precisely the provision of this Report and Recommendation to which it pertains.  Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity.  Fed.R.Civ.P. 72(b)(2), Local Rule 72.1(d). The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc.  If the Court determines that any objections are without merit, it may rule without awaiting the response.

Date: March 15, 2013                    s/Michael Hluchaniuk
                                        Michael Hluchaniuk
                                        United States Magistrate Judge

## CERTIFICATE OF SERVICE

I certify that on March 15, 2013, I electronically filed the foregoing paper with the Clerk of the Court using the ECF system, which will send electronic notification to the following: Eddy Pierre Pierre, Marc J. Shefman, Laura A. Sagolla, AUSA, and the Commissioner of Social Security.

                                        s/Tammy Hallwood
                                        Case Manager
                                        (810) 341-7850
                                        tammy_hallwood@mied.uscourts.gov